UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DONALD RYAN SULLIVAN,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }   Case No.:  2:17-CV-805-RDP |
| | } |
| **DAVIDSON TRUCKING, INC., et al.,** | } |
| | } |
| **Defendants.** | } |

## **MEMORANDUM OPINION**

This matter is before the court on Defendant National Railroad Passenger Corporation's Motion for Summary Judgment.[1] (Doc. # 92). Consistent with the Eleventh Circuit's decision in *McBride v. Sharpe*, 981 F.2d 1234, 1236 (11th Cir. 1993), the court has provided the *pro se* Plaintiff, Donald Ryan Sullivan, "express, [eighteen]-day notice of the summary judgment rules, of his right to file affidavits or other materials in opposition to the motion, and of the consequences of default."[2] (Doc. # 97). The Motion is fully briefed and ripe for review. (Docs. # 94, 95, 96). For the reasons discussed below, Defendant's Motion (Doc. # 92) is due to be granted, and this case is due to be dismissed without prejudice.

---

[1] Defendant Amtrak also filed a Motion to Strike. (Doc. # 96). The court administratively terminated the Motion, but granted Defendant Amtrak leave to re-file the Motion. (Doc. # 97). Defendant Amtrak did not re-file the Motion, and because the Motion was not re-filed the court has not considered it.

[2] When Amtrak filed its Motion for Summary Judgment, the docket sheet reflected that Plaintiff was represented by counsel. But, when Plaintiff filed a *pro se* response to Defendant's Motion, the court contacted Plaintiff's designated counsel. Designated counsel for Plaintiff informed the court that they were no longer representing Plaintiff. (*See* Doc. # 97). The court subsequently provided Plaintiff with an additional eighteen days to file responsive briefing, affidavits, or other materials in opposition to the motion. (*Id.*). To date, Plaintiff has not supplemented his *pro se* opposition.

**I.    Background**[3]

This case stems from a collision between an Amtrak train and a dump truck. Plaintiff Donald Ryan Sullivan is a resident of Tickfaw, Louisiana, and at all relevant times, an employee of Defendant National Railroad Passenger Corporation ("Amtrak"). (Doc. # 74 at ¶¶ 1, 5; Doc. # 95-1 at 13, 16). Plaintiff started working for Amtrak in 2009 and worked in several positions. (Doc. # 95-1 at 13, 16). At the time of the collision, Plaintiff was an on-board service attendant ("train attendant"). (Doc. # 74 at ¶ 5). In that job, Plaintiff was responsible for assigning seating in the passenger cars, helping passengers on and off the train, assisting with luggage loading and removal, and serving meals. (Doc. # 95-1 at 13).

On November 6, 2015, Plaintiff was on a train carrying passengers to and from the Louisiana State University ("LSU") v. Alabama football game. (Doc. # 95-1 at 44). As the train approached the railroad crossing in Bessemer, Alabama, a dump truck owned by Defendant Davidson Trucking, Inc. ("Davidson"), and operated by its employee, David Wayne Hatcher ("Hatcher"),[4] approached the railroad crossing. (Doc. # 74 at ¶ 7). The railroad crossing was equipped with warning signs, signals, crossbucks, flashing lights, and crossing gates. (Doc. # 92-1 at ¶ 3). The Amtrak train was visible from the crossing and the horn was audibly blowing. (*Id.* at ¶ 6). Despite the fact that the Amtrak train was within hazardous proximity, Hatcher drove past the flashing lights, around the lowered crossing gate, and onto the railroad tracks. (*Id.* at ¶¶ 4, 5). The Amtrak train and dump truck collided. (*Id.* at ¶¶ 7).

At the time of the collision, Plaintiff was in the lounge car with another service attendant,

---

[3] The court has gleaned the facts set out in this opinion from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[4] Hatcher is not a defendant in this action, and may be deceased.

Alfred Hall, and the conductor, Elliott Badger. (Doc. # 95-1 at 45). Plaintiff was sitting down in a booth as the train approached the railroad crossing. (*Id*. at 47). Plaintiff was just starting to stand up to leave the booth when the train collided with the dump truck. (*Id*.). Immediately after the collision, Plaintiff sat back down. (*Id*.). Plaintiff testified that he did not know what happened until the engineer radioed the conductor and said that the train collided with a truck. (*Id*. at 49). As a result of the collision, Plaintiff claims that he has suffered severe, permanent, and disabling injuries. (Doc. # 74 at ¶ 16).

Plaintiff filed this case on October 26, 2016, in the Eastern District of Louisiana. (Doc. # 1). The case was transferred to the Northern District of Alabama on May 16, 2017. (Docs. # 30, 31). Plaintiff filed his Second Amended Complaint on May 21, 2018.[5] (Doc. # 74). In the Second Amended Complaint, Plaintiff alleges the following: (1) violation of the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., against Amtrak; and (2) negligence against Davidson.[6] (*Id*. at 4-8). The federal "hook" in this case is Plaintiff's FELA claim against Amtrak, the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over the remaining state law cause of action against Davidson. *See* 28 U.S.C. §§ 1331, 1367; 42 U.S.C. § 51 *et seq*.

Specifically, in the Operative Complaint, Plaintiff alleges that Amtrak violated FELA in the following ways:

> a. In failing to provide Plaintiff with a reasonably safe place in which to work, which specifically includes safe crossings as required by law;
>
> b. In failing to provide Plaintiff with reasonably safe equipment with which to perform said work;
>
> c. In failing to properly warn Plaintiff of the dangers it knew of beforehand, which

---

[5] The Second Amended Complaint is the Operative Complaint in this case. (Doc. # 74). Counsel for Plaintiff filed the Second Amended Complaint, but has since withdrawn. (*See* Doc. # 97). Plaintiff is proceeding in this action *pro se*. (*Id.*).

[6] Travelers Insurance Company is named as a Defendant in the caption of the Operative Complaint. (Doc. # 474). But Defendant Travelers Insurance Company was dismissed from this case on December 5, 2017. (Doc. # 53).

3

confronted him at this crossing;

d. In failing to appropriately instruct, supervise and monitor its employees as required by 49 C.F.R. §§ 217.1 and 218.11.

e. In traveling at an excessive speed and a speed greater than the established timetable speed and/or slow speed in effect at the time of the collision.

f. In creating and permitting a dangerous and hazardous condition to exist on the crossings, properties, premises, work areas, or equipment where its employees were required to work;

g. In other acts of negligence to be shown at the trial of this case.

(Doc. # 74 at 4-5). Amtrak filed its Answer to Plaintiff's Second Amended Complaint and asserted a cross claim against Davidson. (Doc. # 75). In the cross claim, Amtrak alleges that Davidson is solely liable for the collision, as well as Plaintiff's injuries. (*Id*. at 17-24). Aside from stating that Defendant Davidson is wholly liable for the accident, Amtrak does not allege any independent cause of action against Defendant Davidson. Instead, it appears that Amtrak's cross claim is a "claim" in name only. Thus, the court construes this "claim" as an affirmative defense for indemnity.

On February 28, 2020, Amtrak filed a Motion for Summary Judgment. (Doc. # 92). Amtrak argues that Davidson is solely liable for Plaintiff's injuries under Alabama law. (Doc. # 92). To support its assertions, Amtrak attached Davidson's responses to its Requests for Admission. (Doc. # 92-1) In its responses, Davidson concedes that Hatcher's failure to stop, look, and listen at the railroad crossing was a violation of Alabama Code § 32-5A-150, and the sole cause of the collision. (Doc. # 92-1 at ¶¶ 9, 10). Amtrak argues that Davidson's admissions absolve it of any liability to Plaintiff for any injuries sustained as a result of the November 6, 2015 collision. In responsive briefing, Plaintiff argues that Amtrak should share part of the responsibility, not for the accident itself, but for his resulting injuries. (Doc. # 94 at 1). Davidson did not file any responsive briefing. The court addresses each argument, in turn

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As Anderson teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with

at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also, LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III.   Analysis**

The court first analyzes Amtrak's Motion for Summary Judgment. The court then examines whether it properly has subject matter jurisdiction over this case.

### A.  Plaintiff's FELA Claim is Due to be Dismissed.

Plaintiff brings a single cause of action against Amtrak, alleging a violation of FELA, 45 U.S.C. § 51. That statute provides, in relevant part, that:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part *from the negligence of any of the officers, agents, or employees of such carrier*, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (emphasis added). However, as one federal district court in this circuit noted, "[a] railroad's duty to maintain a safe workplace under FELA does not mean that all workplace dangers must be eliminated; rather, it only requires elimination of those dangers that can reasonably be avoided in light of the normal requirements of the job." *Tootle v. CSX Transp., Inc.*, 746 F. Supp. 2d 1333, 1337 (S.D. Ga. 2010) (citation omitted). "A railroad breaches its duty to provide a safe workplace if it 'knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees.'" *Id*. (quoting *Ulfik v. Metro–North Commuter R.R.,* 77 F.3d 54, 58 (2d Cir. 1996)); *see also Van Gorder v. Grant Trunk Western R.R., Inc.,* 509 F.3d 265, 269 (6th Cir. 2007) ("[A] railroad breaches its duty when it knew or by the exercise of due care should have known that prevalent standards of conduct were inadequate to protect the plaintiff and similarly situated employees." (internal brackets and quotation marks omitted)). Thus, the scope of a railroad's duty is limited to workplace hazards that the railroad could have reasonably foreseen. *Id*. (citing *Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 117 (1963) ("[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence.")).

Generally, as indicated in the text of the statue, a plaintiff asserting a claim under FELA must prove that his employer was negligent, and that negligence played a part in causing the plaintiff's injury. *Kernan v. Am. Dredging Co*, 355 U.S. 426, 438-39 (1968); *Yawn v. S. R.R..*

*Co.*, 591 F.2d 312, 317 (5th Cir. 1979). [7] "The standards of liability for negligence under the [FELA] must not be confused with those under the common law." *Alamendarez v. Atchison, T. & S.F. R.R. Co.*, 426 F.2d 1095, 1097 (5th Cir. 1970); *see also CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) ("[W]e have recognized that, in comparison to tort litigation at common law, a relaxed standard of causation applies under FELA." (internal quotation marks and citation omitted)). Specifically, "the causation burden is not the common law proximate cause standard." *Whaley v. Norfolk S. Ry. Co.*, No. 4:14-CV-0108-HLM, 2015 WL 11726510, at *7 (N.D. Ga. June 2, 2015) (citation omitted). Rather, under FELA, a railroad caused or contributed to its employee's injurie(s) "if the railroad's negligence played a part no matter how small in bringing about the injury." *Id.* (quoting *McBride*, 564 U.S. at 692). This light burden has been referred to as "featherweight." *Id*. (citation omitted).

Amtrak contends that summary judgment is proper on Plaintiff's FELA claim because Defendant Davidson has admitted its driver (Hatcher) was the sole cause of the accident under Alabama law. Amtrak argues that under Alabama law, if a motorist breaches his duty to stop, look, and listen before entering a railroad crossing then the *sole responsibility* for any resulting collision is on the motorist.[8] *Norfolk Southern Railway Co. v. Johnson*, 75 So.3d 624, 642-446 (Ala. 2011). To support this argument, Amtrak argues that the Supreme Court of Alabama has repeatedly held that any motorist who breaches his duty to stop look and listen is the sole cause of any collision. *Norfolk S. R.R. Co. v. Johnson*, 75 So. 3d 624, 644-45 (Ala. 2011); *see*

---

[7] Opinions of the United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the United States Court of Appeals for the Eleventh Circuit, are binding precedent on this Court. *Bonner v. City of Prichard. Ala.*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

[8] This is true unless special circumstances existing at the crossing suggest that even by keeping a proper lookout he could not have been aware of the presence of the railroad crossing or of the danger presented by that crossing. *Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600 (Ala. 1998). The record does not reflect, and the parties do not argue, that special circumstances impeded Hatcher's ability to stop, look, and listed, the time of the November 6, 2015 collision. Rather, it is undisputed that Hatcher had a clear view of the train when he drove the dump truck between the crossbucks and directly into the path of the oncoming train. (Docs. # 92, 92-1).

8

*Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600, 605 (Ala. 1998) ("The general rule . . . is that where a motorist fails to 'Stop, Look & Listen' before crossing a railroad track, and he thereby runs into or collides with a train on its track at a public crossing, he is guilty of contributory negligence as a matter of law *and his negligence will be treated as the sole proximate cause of his injuries.*"); *Middaugh v. City of Montgomery*, 621 So.2d 275 (Ala. 1993) (affirming summary judgment on negligence and wantonness claims where the evidence indicated that the motorist's failure to yield at intersection was the sole proximate cause of the accident); and *Borden v. CSX Transp., Inc.*, 843 F. Supp. 1410, 1424 n. 9 (M.D. Ala. 1993) (affirming a summary judgment on negligence and wantonness claims in railroad-crossing case where plaintiff's failure to "stop, look, and listen" at crossing was the sole proximate cause of the accident and stating "if a Defendant in the instant case had been wanton or negligent, such wantonness or negligence could not have been a proximate cause of the subject accident").

Amtrak's argument misses the mark.[9] Indeed, this court recognizes that a motorist's duty to "stop, look, and listen" is deeply rooted in Alabama common law, and is codified in Alabama Code § 32-5A-150. But, Plaintiff's cause of action against Amtrak is *not* based on Alabama law; rather, he alleges that Amtrak violated FELA, a federal statute.[10] Under FELA, "[w]hat constitutes negligence for [] [FELA] purposes is a federal question." *Urie v. Thompson*, 337 U.S. 163, 174 (1949). Thus, the relevant question in this case must be analyzed under federal law, not Alabama law. *Id.* Even though Amtrak's argument about what law applies is off target, it is correct in this sense: the Rule 56 record is devoid of any evidence indicating that Amtrak was negligent and that its alleged negligence played in any part causing Plaintiff's injury.

---

[9] The cases cited by Amtrak in support of its argument do not involve FELA claims. Rather, all of those cases involve state law causes of action, such as negligence and wantonness.

[10] Plaintiff does plead a state law cause of action for negligence against Defendant Davidson Trucking, but not Amtrak.

9

In Plaintiff's opposition to Amtrak's Motion for Summary Judgment, Plaintiff does not assert that Amtrak was negligent, nor explain how the railroad was negligent. (*See* Doc. # 94). Rather, Plaintiff merely argues that:

> Amtrak shares part of the responsibility in the injuries received by the Plaintiff. The evidence for the opposition are [sic] as follows:
>
> 1. Amtrak is responsible for the safe working conditions of all employees. There is no warning system in the passenger areas of Amtrak Trains. The engineer had no way of alerting crew of the emergency ahead and possible crash.
>
> 2. Amtrak trains employees to listen for the sound of the air releasing in the emergency braking system, and to yell to any passengers in the surrounding area "sit down and hold on[.]" [] This was reiterated over and over by management . . . . .
>
> 3. Amtrak conductors must have their eyes on the tracks ahead of them[] in anticipation of any possible strikes. The conductor should have been able to see an 18 wheel dump truck go around a barrier and approach the tracks.
>
> 4. The Amtrak conductor did not apply the emergency brakes under seconds after the crash.
>
> 5. Due to the negligence of the conductor not applying the emergency brakes in a timely manner, and the lack of entire train warning system, the plaintiff was not able to warn passengers and brace himself for impact, which could have prevented or minimize[d] injuries. . . . .

(Doc. # 94 at 1). It is clear from Plaintiff's opposition that he does not dispute the negligence of Hatcher, the dump truck driver. (*Id.*). Rather, Plaintiff argues that Amtrak shares part of the responsibility, not for the accident itself, but for his resulting injuries. (*Id.*). Liberally construed, the court interprets Plaintiff's assertions to allege that Amtrak was negligent because: (1) it failed to have a "warning system" in the passenger areas of the train, and (2) the conductor belatedly applied the warning brakes. (*Id.*).

As an initial matter, the court notes that Plaintiff's bald assertions regarding Amtrak's alleged negligence are not supported by Rule 56 record evidence. Further, Plaintiff's arguments are the type that require expert testimony. "[N]othing in FELA alters the accepted fact that unless

10

the connection between the negligence and the injury is a kind that would be obvious to laymen, expert testimony is required." *Whaley*, 2015 WL 11726510, at *7 (quoting *Volner v. Union Pac. R.R. Co.*, No. CIV 11-003-JHP, 2011 WL 6056552, at *4 (E.D. Okla. Dec. 6, 2011) (internal citations and quotation marks omitted)). Thus, expert testimony is unnecessary in cases where a layperson can understand what caused the injury. But when there is no obvious origin to an injury, and it has multiple potential etiologies (as the Rule 56 record indicates in this case), expert testimony is necessary to establish causation.

For example, in *Whaley v. Norfolk Southern Railway Company*, 2015 WL 11726510, at *7-8, a court in this district held that a Plaintiff could not recover under FELA for his injuries without expert testimony to establish causation. In *Whaley*, a railroad worker claimed he suffered a heat stroke while working for the railroad, and the heat stroke either caused or exacerbated his chronic kidney disease. *Id.* at *4. The Rule 56 record contained two expert reports, but neither expert provided evidence of specific medical causation linking the railroad worker's alleged injuries with the railroad's purported negligence. *Id.* at *7-8.

In its analysis, the court stated that "[a]bsent specific medical causation evidence, which [the railroad worker] does not have, the temporal proximity argument is not enough to create a genuine dispute as to causation." *Id*. Simply put, just because Plaintiff may have suffered an injury while working on the railroad does not make the railroad liable for those injuries. Instead, the FELA statute requires that the railroad's negligence must have played a part (no matter how small) in bringing about the injury. And the lackluster causation evidence in the Rule 56 record did not pass muster. Thus, the court determined that because no genuine dispute of fact remained as to whether the incident caused Plaintiff's injuries, summary judgment for the railroad was proper. *Id.*

The same is true here. The Rule 56 record in this case is utterly devoid of evidence

related to any causation of Plaintiff's alleged injuries other than the dump truck illegally entering the tracks. In fact, the only indication that Amtrak is responsible for Plaintiff's injuries is Plaintiff's conclusory deposition testimony (Doc. # 95-1) and his equally conclusory summary judgment briefing (Doc. # 94). Tellingly, the Rule 56 record does not contain a single expert report, nor does it contain any other evidence linking Plaintiff's purported injury to Amtrak's negligence.

The court now turns its analysis to the arguments raised in Plaintiff's summary judgment briefing and first addresses Plaintiff's claim that Amtrak was negligent because it failed to have a "warning system" in the passenger areas of the train. Aside from Plaintiff's bald assertions that a "warning system" was not in place, he has not presented evidence indicating that Amtrak is required to have such a system. Similarly, this court is unsure that a warning system operated by either a train conductor or engineer even exists, let alone why it should be required in all Amtrak trains in the passenger areas. [11] And, even if such a system does exist, Plaintiff has not presented any evidence, expert or otherwise, as to how or why a whole train warning system would have prevented or minimized his alleged injuries.

The proper inquiry under FELA is "whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task." *Tootle v. CSX Transp., Inc.*, 746 F. Supp. 2d 1333, 1338 (S.D. Ga. 2010) (citing *McKennon v. CSX Transp., Inc.,* 897 F. Supp. 1024, 1027 (M.D. Tenn. 1995); *see also Darrough v. CSX Transp., Inc.,* 321 F.3d 674, 676 (7th Cir. 2003) ("The question is whether the

---

[11] In the similar case of *Tootle v. CSX Transp., Inc.*, 724 F. Supp. 2d 1333, 1338-39 (S.D. Ga. 2010), the court held that a plaintiff failed to establish negligence under FELA on behalf of the defendant railroad when the plaintiff alleged that using a lighter piece of equipment would have prevented her shoulder injury. The court noted that the Rule 56 record did not reflect that a lighter piece of equipment existed. *Id.* (Notably, the Rule 56 record was devoid of evidence that a lighter hose existed). Further, the court stated that even if a lighter hose did exist, the record did not reflect that the hose would have been adequate for the relevant task. *Id.* Ultimately, the court determined that the plaintiff failed to establish the defendant railroad was negligent, and thus, summary judgment was due to be granted on the plaintiff's FELA claim. *Id.*

railroad exercised reasonable care in creating a reasonably safe working environment, not whether that working environment could have been safer.")). Plaintiff's speculation and bald assertions that Amtrak was required to have a "warning system" are insufficient to raise any inference that Amtrak was negligent.

Much like his first contention, Plaintiff's second argument (that the Amtrak conductor was negligent by belatedly applying the warning brakes) is not supported by the Rule 56 record. Plaintiff's assertion in his legal papers that the "Amtrak conductor must have their eyes on the tracks ahead of them" and "the conductor should have been able to see an 18[-]wheel dump truck go around the barrier and approach the tracks" is not supported by the Rule 56 evidence and is contradicted by his own deposition testimony. (Doc. # 94 at 1). According to Plaintiff, the conductor could not have proactively applied the brakes because he was in the lounge car with Plaintiff at the time of the collision. (Doc. # 95-1 at 45). Plaintiff also testified that the engineer, not the conductor, is the employee is charge of operating the controls, including the emergency brakes. In fact, Plaintiff admitted he was not even aware that the train was involved in a collision until the engineer radioed the conductor (who, again, was in the lounge car with the Plaintiff) and stated that the train hit a truck. (*Id.* at 49-50).

Bare allegations not supported by materials in the Rule 56 record are insufficient to create a genuine dispute of material fact sufficient to overcome summary judgment. Therefore, Amtrak's Motion for Summary Judgment is due to be granted.

### B. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Remaining Cause of Action.

Federal courts are courts of limited jurisdiction and are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citing *Univ. of S. Ala. v.*

13

*Am. Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999)). The federal "hook" in Plaintiff's case is his federal cause of action against Amtrak. *See* 28 U.S.C. § 1331. His pendent state law claims are proper pursuant to U.S.C. § 1367. But, because the court has determined that Plaintiff's federal cause of action is due to be dismissed, the court must re-examine whether the court properly has jurisdiction over the remaining claim in this case. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [ ] [ ] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

According to section 1367(a) "the district courts shall have supplemental jurisdiction over all [state law] claims that are so related to [federal] claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The decision to exercise supplemental jurisdiction over pendent state claims is within the discretion of the district court. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)). But, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Id.* (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). Given the Eleventh Circuit's guidance on this matter, this court declines to retain Plaintiff's pendent state-law claims without an accompanying independent basis for federal jurisdiction.

After a careful examination of the Rule 56 record, the court notes that 28 U.S.C. § 1332 could supply an independent basis for jurisdiction. The statutory basis for diversity jurisdiction states, in relevant part: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States . . ." Additionally, to properly allege jurisdiction, Rule 8(a)(1) of the Federal Rules of Civil procedure requires that a pleading must

14

contain "a short and plain statement of the grounds for the court's jurisdiction." Furthermore, Fed. R. Civ. P. 12(h)(3) requires that, "if that court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Court's often strictly construe the pleading requirements for diversity jurisdiction. *See e.g.*, *McGovern v. American Airlines*, 511 F.2d 653, 654 (5th Cir. 1975) (noting that "[w]hen jurisdiction depends on citizenship, citizenship should be 'distinctly and affirmatively alleged.'"). Of course, at this stage of the case, the court also has the benefit of the Rule 56 record. But, that is of no help to Plaintiff either.

Notably, Plaintiff's complaint and the Rule 56 record omit facts necessary for the court to perform that requisite diversity jurisdiction analysis (*i.e.*, the amount in controversy). Although the parties are completely diverse[12], section 1332 is not plead in Plaintiff's Second Amended Complaint as an independent basis for jurisdiction (which is required by Rule 8(a)). And, in any event, there is no showing that Plaintiff's claims put in controversy greater than $75,000. The burden to establish subject matter jurisdiction rests with the party bringing the claim. *Sweet Pea Marine Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) (citation omitted). If that party fails to shoulder that burden, the case must be dismissed. *See e.g.*, *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008) ("[I]f the court determines that subject matter jurisdiction is lacking, it must dismiss the entire case.") (alteration supplied). Plaintiff has not established subject matter jurisdiction under section 1332. Thus, at best the remaining state claim is pendant under section 1367.

Thus, this court will follow the instruction of the Eleventh Circuit and decline to exercise supplemental jurisdiction over the remaining state-law claims in this case. *L.A. Draper & Son*, 735 F.2d at 427 ("[t]he discretion to entertain or dismiss the pendent state [law] claims continues

---

[12] The only remaining parties are completely diverse. Plaintiff is a resident of Tickfaw, Louisiana, and Davidson was incorporated in and maintains its principal of business in Alabama. (Doc. # 74 at ¶¶ 1, 6).

throughout the proceeding."). This case is due to be dismissed without prejudice, Plaintiff may re-file this case in the appropriate state court within thirty days of dismissal.[13]

## IV. Conclusion

For the reasons discussed above, Defendant Amtrak's Motion (Doc. # 92) is due to be granted and this case is due to be dismissed without prejudice. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this June 30, 2020.

*/s/ R. David Proctor*
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[13] Of course, if Plaintiff wishes to challenge the court's jurisdictional determination, he may raise his arguments in a Motion for Reconsideration. Fed. R. Civ. P. 59, 60.